UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| NIGEL MARLIN REID, Sr., | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) No.: 2:14-cv-41-JRG-DHI ) |
| CRAIG PRICE, JENNIFER GENTRY, LETITIA SINGLETON, JASON PHIPPS and CITY OF MORRISTOWN, TENNESSEE, | ) ) ) ) ) |
| *Defendants*. | ) |

## MEMORANDUM AND ORDER

Nigel Marlin Reid, Sr., brings this *pro se* civil rights complaint for injunctive and monetary relief under 42 U.S.C. § 1983, against five defendants, each of whom has allegedly violated his right to "Freedom of Expression," as secured to him by the First Amendment of the U.S. Constitution, [Doc. 2]. Plaintiff has also submitted numerous attachments to his pleading, [Docs. 2-1 through 2-13]. Plaintiff's application to proceed *in forma pauperis* is **GRANTED**, [Doc. 1].

### I.   Screening the Complaint

Cases filed *in forma pauperis* must be screened under 28 U.S.C.§ 1915(e)(2) to determine whether they state a claim entitling a plaintiff to relief or whether they are frivolous or malicious or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); *McGore v. Wrigglesworth*, 114 F.3d 601, 609 (6th

Cir. 1997) (finding that § 1915(e)(2) applies to complaints filed *in forma pauperis* by prisoners and non-prisoners alike), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). A complaint will not pass the screening test unless it presents "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," so as to clothe a claim in "facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "facial plausibility" standard does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citations and internal quotation marks omitted).

If the complaint does not state a claim or is frivolous, malicious, or seeks damages from an immune defendant, this suit must be dismissed. In performing its screening task, the Court bears in mind that the pleadings of *pro s*e litigants must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court examines the complaint in light of these requirements.

## II. Discussion

This case is one of several federal lawsuits involving disputes between plaintiff and owners or managers of commercial, charitable, or recreational property, who have suspended him or taken other action to prohibit him from going on their properties. *See e.g., Reid v. West*, Civil Action No. 2:14-cv-334 (E.D. Tenn. 2015) (Memorandum and Order, Jan. 21, 2015); *Reid v. Williams*, Civil Action No. 2:13-cv-275 (E.D. Tenn. 2013) (Memorandum and Order, Nov. 21, 2013); *Reid v. Osborne*, Civil Action No. 2:11-cv-

2

283 (E.D. Tenn. 2012) (Memorandum and Order Aug. 21, 2012). Though the complaint is confusing, the Court has endeavored to piece together plaintiff's claims from the allegations in the pleading and the contents of documents submitted as attachments to the complaint.

1. **Factual Allegations**

In the pleading, plaintiff maintains that, on February 4, 2014, Defendant Letitia Singleton sent a statement to Defendant Craig Price that she did not want plaintiff to be in her Zumba class at the Parks and Recreation Center. According to an attachment to the complaint, Price is the Director of the Morristown, Tennessee, Parks and Recreation Department, [Doc. 2, Attachment 2-8]. In her statement, Singleton writes that plaintiff came into the Zumba class she was teaching, stood obscured from her view, but visible to her students, and that, afterwards, her students complained that plaintiff "creeped them out" and asked if he could be requested not to "come into the class and just watch the ladies like he did," [Doc. 2, Attachment 2-6].

Plaintiff alleges that, on February 6, 2014, Price refused to allow him to participate in the Zumba class and asked another employee to write a restraining letter, listing the facilities managed by Parks and Recreation from which plaintiff had been banned, [Doc. 2, Attachment 2-7]. Plaintiff also maintains that on that same date, he went the Parks and Recreation office to talk to Price, who was out of the office, so he spoke instead with Defendant Jennifer Gentry. Gentry informed plaintiff that Price had prohibited plaintiff from joining the Zumba class. Plaintiff responded that he "was tired of white people treating him like a N_ _ _ _ _ [ethnic slur], PERIOD" and that he meant it.

3

Price instructed Gentry to call the Morristown Police Department, and plaintiff cites to a police report as stating that plaintiff had been threatening and harassing Gentry and other Parks and Recreation staff members, [Doc. 2, Attachment 2-3]. Later, however, Gentry clarified that plaintiff had not actually threatened her on that date, but that she had perceived the conversation as being threatening towards her, [Doc. 2, Attachment 2-5]. A letter from an officer with the Morristown Police Department, dated February 7, 2014, lists five locations from which, at the request of the management of Parks and Recreation, plaintiff was not allowed to frequent and warns him that he will be prosecuted if he is found on the listed properties after that date, [Doc. 2, Attachment 2-2 and 2-4 (2-4 is a duplicate copy of 2-2)].

Plaintiff attended a city council meeting to complain about being banned from Parks and Recreation properties, but the problem was not resolved. Plaintiff also contacted the NAACP and his city councilman for help with his suspension from the Parks and Recreation facilities. The NAACP representative and plaintiff's city councilman met with Price in June and, thereafter, Price wrote plaintiff a letter indicating that plaintiff's full privileges to all Parks and Recreation facilities would be restored on March 8, 2014, with a six-month probationary period, [Attachment 2-8 and 2-9 (2-9 is a duplicate copy of 2-8)]. In another letter, Price also indicates that plaintiff's suspension from certain Parks and Recreation facilities would be lifted on February 8, 2014, though his return to those properties was conditioned on a years' probation, with the warning that any future violations of the rules could lead to his permanent suspension, [Attachment 2-11].

4

Obviously dissatisfied with these results, plaintiff called the NAACP representative, who met with the Parks and Recreation Board Chairman who, in turn, invited plaintiff to meet with the Parks and Recreation Board. As the Court understands the plaintiff's allegations, he now is free to go to Morristown parks, which are operated by Parks and Recreation, but he must serve a one year's probationary period, rather than the six-months he initially was set to serve. According to plaintiff, it is a mystery to him as to how his original 13-month suspension, with six months of probation, coalesced into a 12-month suspension, with one years' probation.

Plaintiff maintains that he can prove that he did not break any rules of the Parks and Recreation Department, [Attachment 2-10], and that he has been subjected to violations of his First Amendment rights and to "color/age/national origin sex" discrimination, [Doc. 2 at 2]. For these alleged violations of his civil rights, plaintiff seeks injunctive relief and nine million dollars ($9,000,000) in compensatory damages.

**2. Law and Analysis**

This is not the first time the Court had addressed plaintiff's allegations that it was unconstitutional to suspend him from facilities managed by the Parks and Recreation Department. In *Reid v. West*, 2:14-cv-334 (E.D.Tenn. 2015), plaintiff claimed that Price suspended him permanently from Parks and Recreation facilities, based on an incident which occurred at the Talley-Ward Center on October 13, 2014, during his one-year probationary period. (The Talley-Ward Center was one of the five Parks and Recreation properties from which plaintiff was suspended, [Doc. 2, Attachments 2-2, 2-4, 2-7]).

5

According to an incident report written by Jason Phipps, a Parks and Recreation Department employee, who is also a defendant in the instant case, plaintiff was verbally abusive towards him, [Doc. 19 at 4 in Reid v. West, 2:14-cv-334]. Phipps also stated that plaintiff "aggressively reopened" the door to Phipps' office, which Phipps had closed to avert any further interaction with plaintiff and that the forceful opening of the door caused a dry erase board to fall off the wall. Phipps further reported that plaintiff loudly announced to Phipps that he would be losing his job. The incident report also set forth that plaintiff was attempting to question and "bully" the staff, in the presence of a teenager, [*Id.*].

The doctrine of issue preclusion/collateral estoppel applies to this case. "Issue preclusion, often referred to as collateral estoppel, 'precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action.'" *Georgia-Pacific Consumer Products LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012) (quoting *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 661 (6th Cir. 1990)).

This doctrine applies where "(1) the precise issue raised in the present case [was] raised and actually litigated in the prior proceeding; (2) determination of the issue [was] necessary to the outcome of the prior proceeding; (3) the prior proceeding . . . resulted in a final judgment on the merits; and (4) the party against whom [issue preclusion] is sought ... had a full and fair opportunity to litigate the issue in the prior proceeding."

*Smith v. Securities & Exch. Comm'n*, 129 F.3d 356, 362 (6th Cir. 1997) (*en banc*) (citing *Detroit Police Officers Ass'n v. Young,* 824 F.2d 512, 515 (6th Cir.1987)).

The defendants named in this case, with the exception of Letitia Singleton, were also named as defendants in the cited case. This exception is of no moment because a plaintiff may not "relitigat[e] an issue . . . previously litigated unsuccessfully in another action against the same or a different party." *United States v. Mendoza*, 464 U.S. 154, 159 n.4 (1984) (citing *Parklane Hosiery*, 439 U.S. 322, 326 n. 4 (1979)); *Georgia-Pacific Consumer Products LP*, 701 F.3d at 1098 ) (observing that issue preclusion is properly applied where the same operative facts underlie repeated actions, regardless of a change in legal theories or the "cast of characters-defendants") (quoting *Randles v. Gregart*, 965 F.2d 90, 93 (6th Cir. 1992)).

In plaintiff's prior case, this Court found that his allegations regarding his suspension from the Parks and Recreation properties did not state a plausible claim for relief, [Doc. 19 at 11 in *Reid v. West*, 2:14-cv-334]. In so concluding, the Court found that none of his allegations could be construed as an allegation that he had been deprived of a right guaranteed by the Constitution and went on to determine that "the Parks and Recreation Department has the right to suspend the privileges of a patron who violates his probation (because of prior misconduct) and engages in threatening and abusive conduct toward its employee[s]," [*Id*. at 11-12]. Thus, the issue as to whether the Constitution is implicated by plaintiff's allegations that he was suspended from the facilities of the Parks and Recreation Department has been decided and may not be relitigated in this case.

7

Finally, the only allegations which do not appear to have been litigated in the prior case are plaintiff's fleeting references to discrimination, to a "condition of servitude," and to violations of his First Amendment rights of assembly and to freedom of expression. These claims cannot be addressed here either because they are conclusory.

Absent some elaboration of the facts and circumstances surrounding the alleged discrimination, involuntary servitude, or infringement of his First Amendment rights, plaintiff's bald contentions of discrimination, servitude, and impediments to his rights of assembly and free speech are insufficient to establish viable § 1983 claims. *See Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008) ("[I]n the context of a civil rights claim, . . . conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim.") (citing *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1987)); *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 520 (6th Cir. 2006) (observing that "the court is not required to create a claim for the plaintiff[]") (internal quotation marks and citation omitted); *Cline v. Rogers*, 87 F.3d 176, 184 (6th Cir. 1996) (instructing courts not to suppose a plaintiff would be able to show facts not alleged or that a defendant has violated the law in ways not alleged).

Because these claims are supported by no more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," *Iqbal*, 556 U.S. at 678, plaintiff has failed to state facially plausible claims which would entitle him to relief under § 1983.

### III. Conclusion

For the reasons set forth above, the Court finds that all claims are either conclusory and, thus, fail to state a claim, or are barred by issue preclusion and, thus, are

8

Case 2:14-cv-00041-JRG-DHI   Document 36   Filed 01/26/15   Page 8 of 9   PageID #: 134

frivolous. Upon carefully reviewing this complaint pursuant to 28 U.S.C. § 1915(a)(3), this Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous.[1]

**A separate judgment dismissing this case will enter.**

**ENTER:**

                                                          s/J. RONNIE GREER
                                              UNITED STATES DISTRICT JUDGE

---

[1] As a final note, the Court is especially troubled by plaintiff's increasingly disrespectful, hostile, and even combative language contained in his filings in the Court, [*See, e.g.*, Doc. 32]. This is not the first time that plaintiff's insolent filings have been called to his attention. An order entered in another case plaintiff filed in this Court constructively struck one of his motions from the docket sheet, based on its "egregiously contemptuous" tone and its offensive language, i.e., its reference to the undersigned and a United States Magistrate Judge as corrupted fools and as clowns. *See Reid v. West*, Civil Action No. 2:14-cv-334 (E.D.Tenn. 2015) (Doc. 7, Magistrate Judge's Order of Dec. 1, 2014). Plaintiff should refrain from filing such uncivil motions or pleadings in the future, as they will no longer be countenanced.